# CHARLESTON.

## RUFFNER BROS. *v.* MAIRS & BRO.

Submitted January 22, 1890.—Deecided March 3, 1890.

1. RECEIVERS—NOTICE.
     A court of equity should exercise extreme caution in the appointment of receivers on *ex parte* applications, and be careful that a proper case is presented before adopting this extraordinary procedure, and it should not be done without notice to the party whose property is to be affected, except in cases of the greatest emergency demanding the immediate interference of the Court.

2. RECEIVERS—NOTICE.
     A case which did not authorize the appointment of a receiver, and in which notice of the application should have been given to the defendants.

*Brown & Jackson* for appellants.

*W. A. McCorkle* and *H. C. & L. E. McWhorter* for appellees.

ENGLISH, JUDGE:

This was a suit in equity brought in the circuit court of Kanawha county by A. L. Ruffner and M. P. Ruffner, partners in trade as Ruffner Bros., and others against W. B. Mairs and M. W. Mairs late partners in trade under the firm name of W. B. Mairs & Bro., Frank Noyes, trustee, and

and others, alleging the insolvency of said firm of W. B. Mairs & Bro., and that on the 3d day of June, 1889, said firm executed an assignment to Frank Noyes trustee conveying all of their dry goods and groceries in the store-house on Lovell street, and all their accounts due said firm in trust to secure various amounts of money therein designated to different creditors of said firm therein named preferring, *first*, John W. Mairs in the sum of $500.00; *second*, James Bibby & Bro. in the sum of $500.00; and *third*, P. H. Noyes & Co. in the sum of $3,964.10, and providing for Ruffner Bros. and several other firms in different amounts to be paid *pro rata* and farther providing that said trustee should take possession of said goods and sell them as soon as convenient, which trust-deed was duly recorded, and farther alleging that said trust-deed is fraudulent and void, for the reason the same was intended to hinder, delay and defraud the creditors of said W. B. Mairs & Bro., that the said John W. Mairs is the brother of the defendants W. B. Mairs & Co., and that they do not owe him the said sum of $500.00; that the said W. B. Mairs & Bro. are not indebted to the said James Bibby & Bro. in the sum of $500.00 and the same is set up in said trust-deed to defeat complainants in the collection of their debts, that the said sum of $3,964.10 set out as due P. H. Noyes & Co. is amply secured on a large number of railroad ties and other lumber, and plaintiffs have no other security for their said indebtedness; that said P. H. Noyes & Co. should be compelled to resort to said staves and ties, and reserve the property set out in said trust-deed for the satisfaction of plaintiffs' claims; that said trust-deed is a fraud upon them and if P. H. Noyes & Co., John W. Mairs and Bibby & Bro. or either of them are satisfied out of the proceeds of said property before plaintiffs, nothing will be left to satisfy them, said W. B. Mairs & Co. being insolvent.

The plaintiffs also allege that said assignment is void on its face, for the reason that the sale being left entirely to the discretion and convenience of the trustee great injustice may result to complainants as well as to other creditors of W. B. Mairs & Bro.; that Frank Noyes, the trustee aforesaid, is a brother to one of the firm of P. H. Noyes & Co., the largest of the preferred creditors in said trust-deed, and it

would be to the interest of the other creditors that some other party be selected as trustee ; that said trust is fraudulent and void, and that the same for the reasons aforesaid should be set aside and held for naught and that a receiver should be appointed, and that the property mentioned in said trust-deed should be sold by him and applied to plaintiff's indebtness ; that said Frank Noyes is in charge of said store and the contents of it and is selling the goods and applying the proceeds to the said debts as is set out in said deed of assignment which is wrong ; and they pray that said P. H. Noyes & Co. be confined to their security outside of the assignment, that said trust-deed be held void, that said Frank Noyes be enjoined from selling said goods and applying the proceeds according to the terms of said trust-deed, that a receiver be appointed to take charge of said stock of goods and said accounts, and that he dispose of the same and pay into court the proceeds of said sales, and that said proceeds be paid to complainants prior to all others in proportion to the amount of their bills.

This bill was sworn to, and on the 10th day of June, 1889, the circuit court of said county made an order appointing C. C. Gebhart special receiver and ordering him to take into his possession the property set out in the bill and exhibits in the cause, and directing him to sell the same at private sale for the space of thirty days, and the remainder at public auction excepting the claim set out in said assignment, and directing him to collect that as soon as possible, and to report his proceedings to court, and requiring bond with good security to be given by said receiver in the penalty of $1,000.00.

On the 19th day of June, 1889, the defendants demurred to plaintiff's bill, and moved to discharge the receiver appointed in said cause, which demurrers and motions were overruled, and the defendants answered and the plaintiffs replied generally, and the defendants renewed their motions to discharge the receiver, and said motions were set for hearing on the 12th day of July 1889. From these decrees the defendants Frank Noyes trustee, John W. Mairs, James Bibby & Bro. and W. B. Mairs & Bro. applied for and obtained an appeal to this Court.

83

Counsel for the appellees contend that the appeal in this case was improvidently awarded and should be dismissed; that the order appealed from is not a final order, and that there is no clause of section 1 of chapter 135 of the Code that would confer appellate jurisdiction upon this Court.   The seventh clause of said section however, provides that " In any case in chancery wherein there is a decree or order dissolving or refusing to dissolve an injunction or requiring money to be paid or real estate to be sold, or the possession or title of the property to be changed, or adjudicating the principles of the cause."   " A party to a controversy in any circuit court may obtain from the Supreme Court of Appeals or a judge thereof in vacation, an appeal from a decree or order of such circuit court.

Counsel for the appellees rely on the case of *Harris* v. *Hauser*, reported in 26th W. Va. 595 to support their position; but upon examination of that case it will be found that Judge Green in delivering the opinion of the Court says, speaking of the lumber in controversy, " As this lumber had not been thus placed upon the cars when this last order was made directing W. B. Hankins as receiver to take possession of it and make sale thereof, it is obvious that Hauser was in possession of it, and not only consented to but asked this order to be made, of course he could not complain of it.   Harris, the plaintiff, can not appeal from it because this order does not change his possession of this property he never having had possession of it."   It will be perceived that in that case the Court was of opinion that the possession of the property had not been changed and the question of jurisdiction was decided against the appellant for that reason, and not because personal property alone was involved in the suit.   And although Judge Green in delivering the opinion of the Court in the case of *Hutton* v. *Lockridge*, 27 W. Va. 435, referring to his opinion in the case of *Harris* v. *Hauser*, *supra*, says: "I thought it questionable whether the order of a circuit court appointing a receiver of personal property could be appealed from under chapter 157 section 1 of the Acts of 1882,(which is the same as section 1 of chapter 135 of the Code), only as requiring the possession or title of the property to be changed, a ground for an appeal under the seventh paragraph

of said section; and I was by no means satisfied that the statute by the words 'the possession or title of the property' did not mean the title or possession of real estate to be changed; for just before using these words it had spoken of real estate to be sold."

Yet the question did not properly arise in the case of *Hutton* v. *Lockridge,* either for the reason that in that case the order required the possession of real property only to be changed, so that the impressions and doubts expressed in both of these cases must be regarded merely as *obiter dicta* and so far as I am advised the question remains an open one.

The first question then to be considered is the one of jurisdiction; the language of the seventh clause of said section, is as follows: "In any case in chancery wherein there is a decree or order dissolving or refusing to dissolve an injunction, or requiring money to be paid, or real estate to be sold, or the possession or title of the property to be changed or adjudicating the principles of the cause" an appeal may be obtained.

Now if the possession or title of real estate alone could be changed in chancery, and controversies in regard to the change of the possession and title to personal property did not quite as frequently arise in said court, as they do in reference to real estate; controversies too in which large and varied interests are involved, where the necessity of an appeal and supersedeas is frequently more urgent than in the case of real estate, for the reason that it may be so much more readily squandered and scattered, I might see some reason for drawing a distinction in favor of the party to a controversy where the possession or title if real estate alone was changed, but I must confess that I see no good reason why a change in the possession or title of real estate should entitle the party aggrieved any more readily to the benefits of an appeal, than like action in regard to personal property. The cases prescribed in said clause in which an appeal may be taken by a party to the controversy are, *first,* from a decree or order dissolving or refusing to dissolve an injunction ; *second,* from a decree or order requiring money to be paid ; *third,* from a decree or order directing real estate to

be sold; *fourth,* from a decree or order directing the possession or title of the property to be changed; *fifth,* from a decree or order adjudicating the principles of the cause.

My construction of the language "from a decree or order directing the possession or title of the property to be changed would be that it intended the property involved in the controversy let it be real or personal, and if we refer to chapter 13 of the Code, page 99, which furnishes rules of construction, we find by the seventeenth clause that "The word property or estate embraces both real and personal estate, and Bouviers' law dictionary says the term property embraces every species of valuable right and interest including real and personal property and hereditaments; I am of opinion therefore that if either of the orders complained of changed the title or possession of the property in controversy, that jurisdiction was thereby conferred on this Court to review the same on appeal upon application of a party to the controversy. Did either of said decrees change the possession of the property in controversy? The bill praying the appointment of a receiver which was sworn to by one of the appellees, alleged that Frank Noyes was in charge of said store and its contents and was selling out the goods *etc.,* and the decree of June 10th, 1889, appointed C. C. Gebhart special receiver and directed him to take into his possession the property set out in the bill and sell the same. This decree surely changed the possession of the property, and seems to me to present a case which may come to this Court on appeal.

Does this case upon the allegations contained in the bill present such a state of facts as would entitle the plaintiffs to the appointment of a receiver. It is alleged that Frank Noyes the trustee is a brother of one of the firm of P. H. Noyes & Co., the largest of the preferred creditors in said trust-deed, and that it would be to the interest of the other creditors that some other party should be selected as trustee. But no reason is assigned why some other party should be selected as such trustee. It is neither alleged that the trustee has acted fraudulently or dishonestly in any manner or that he intends so to do. It is alleged that said trustee is selling the goods and applying the proceeds to the said debts as set out

in said deed of assignment, which is wrong. The parties interested in the administration of said trust are afforded ample protection by section 6 of chapter 72 of the Code, which provides that no trustee shall receive any of the proceeds of such sale until he if required by the grantor or any *cestui que trust* give bond in a penalty equal at least to the full value of the property to be sold with good security before the clerk of the county court, of the county where said property is, conditioned for the faithful performance of his duty as such trustee, and that he will account for and pay over all money that may come into his hands in the execution of such trust.

It is further claimed in plaintiff's bill that said assignment is void for the reason that the sale is left entirely to the discretion and convenience of the trustee, and great injustice may result therefrom to the plaintiffs and other creditors of W. B. Mairs & Bro., but section 6 of chapter 72 also provides that the trustee in any such deed shall whenever required by any creditor secured *etc.* sell the property conveyed by the deed; and the statute forms a part of the contract unless otherwise expressly provided in the trust-deed, and it will also be perceived that in another clause of the bill plaintiffs complain that the trustee is already selling the property, and is misapplying the proceeds; but if this was true as stated before it could have been remedied by requiring bond under said section, I do not think the bill presents such facts as would entitle plaintiffs to the appointment of a receiver. The trustee in a deed of trust has been held by numerous decisions to be a purchaser for valuable consideration. See *Wickham* v. *Lewis Martin & Co.*, 13 Gratt. 427; *Evans* v. *Greenhow*, 15 Gratt. 153, and *Western M. & M. Co.* v. *Peytona C. C. Co.*, 8 W. Va. 409, 441, and it is nowhere alleged in the bill that the trustee Frank Noyes had notice of the fraudulent intent of his immediate grantors, or of any fraud rendering void the title of such grantors, and it is held by this Court in the case of *Harden* v. *Wagner*, 22 W. Va. 366, that "A provision in the conveyance of a stock of goods or other chattels, that the trustee may continue the business, if intended merely for the purpose of realizing the trust-fund and with a view of winding up the business, is

not fraudulent if the conveyance is proper in other respects. *Marks* v. *Hill*, 15 Gratt. 400 ; *Gordon* v. *Cannon*, 18 Gratt. 387.

On the 19th day of June 1889 the appellants demurred to the plaintiff's bill, and moved the court to discharge the receiver appointed in the cause on the ground that said receiver was appointed without notice and that the bill on its face stated no cause to justify the appointment of a receiver, which demurrers and motions were over-ruled. Did the court err in this ruling? Beach on Receivers, sec. 134, in speaking of the appointment of receivers, says "But in whatever manner the relief is sought from the court, it is the well settled practice that the defendant whose possession of property is liable to be wrested from him and taken by the court, through its receiver should have due notice of the application, so that he may be heard if he desire in his own defence. This is also in deference to the long established principles of courts of equity not to encourage *ex parte* proceedings except in cases of emergency, and when such proceedings are indispensable to the proper adjudication of the rights of the parties before the court, or in cases of irreparable impending injury." See *R. R. Co.* v. *Jewett*, 37 Ohio St. 649. *Verplanck* v. *Mercantile Insurance Co.*, 2 Paige 438; *Sanford* v. *Sinclair*, 8 Paige 373.

High on Receivers, section 111 says, " Courts of equity are exceeding averse to the exercise of this extraordinary jurisdiction by the appointment of receivers upon *ex parte* applications and this practice is never tolerated in cases of greatest emergency, demanding the immediate interference of the court for the prevention of irreparable injury or where defendant has absconded and wilfully put himself beyond the jurisdiction of the court. And it may be stated as the settled practice in England and America to require the moving party to give due notice of the application to the defendant, *etc.*"

Beach on Receivers, section 141 also says, " A motion to appoint a receiver will not be entertained unless notice has been given to the defendant if practicable, and the appointment will not be made without notice save in cases of irreparable impending injury."

In the Code, chapter 133, section 28, p. 825, it is provided that "A court of equity may in any proper case pending therein in which the property of a corporation, firm or person is involved, and there is danger of loss or misappropriation of the same or a material part thereof, appoint a special receiver of such property *etc.*" In the light of these authorities it seems to me that a court of equity should exercise extreme caution in the appointment of receivers and be careful that a " proper case" is presented before exercising this extraordinary and oftentimes harsh procedure, and while notice of such application is not expressly provided for in our statute, it is the better practice and the one sanctioned by the best authorities on the subject to require notice to be given to the defendant before passing upon the application, unless it be in cases of great emergency and imperative necessity as hereinbefore stated ; but no such an emergency appears to have existed from the facts presented in this case.

The decrees complained of must be reversed, and the cause remanded to the Circuit Court of Kanawha County for further proceedings to be had therein.

REVERSED. REMANDED.